UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JACQUELINE LECLAIR,

                 Plaintiff,

    -against-                              1:08-CV-01354 (LEK/RFT)

BERKSHIRE UNION FREE
SCHOOL DISTRICT,

                 Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Presently before the Court is a Motion for summary judgment by Defendant Berkshire Union

Free School District ("BUFSD") against Jacqueline LeClair ("Plaintiff").  Dkt. No. 28.  In her

Complaint, Plaintiff brings claims for inference with her rights under the Family and Medical Leave

Act ("FMLA"), interference with Plaintiff's ability to exercise her rights under the FMLA because

of failure to provide notice, and retaliation against Plaintiff for attempting to exercise her FMLA

rights.  Dkt. No. 1.  For the reasons that follow, Defendant's Motion is granted with respect to

Plaintiff's claim for interference, but denied with respect to Plaintiff's claims for failure to provide

notice and for retaliation.

## II. BACKGROUND

      In September 2006, Defendant hired Plaintiff as a probationary Teaching Assistant. Dkt. No.

1 ¶ 7.  After being hired by Defendant, Plaintiff joined the Berkshire Teacher's Union.  Defendant's

Motion (Dkt. No. 28), Gaudette Aff. ¶ 6.  The Berkshire Teacher's Union and Defendant had

negotiated a Collective Bargaining Agreement ("CBA"), under which Plaintiff and other union

employees were eligible for a specified amount of paid sick, personal, and bereavement leave during

their first five years of employment.  Id. ¶ 4.  Plaintiff was provided with a copy of this agreement at

the time of her entrance interview.  Leclair Aff. (Dkt. No. 32) ¶54.  Defendant informs all

probationary employees that, irrespective of the amount of leave they are eligible for under the

CBA, attendance is a significant factor in Defendant's decision as to whether the employee will

continue to work for the Defendant and/or receive tenure.  Gaudette Aff. ¶ 6.

        The procedure for taking leave in the School District depends on whether the employee

anticipates in advance that leave will be needed.  Gaudette Aff. ¶ 9.  If the employee anticipates in

advance that she will need leave, she is required to submit a "Time Off Request Form."  Id.

However, if the employee is not able to anticipate that she will need leave ahead of time, the

employee is supposed to call a central number and report that she is unable to come into work.

Gaudette Aff. ¶ 9.  Plaintiff was informed of this procedure for requesting leave shortly after her

initial hire.  Defendant's Motion, Ex. M at 66-67.

        During Plaintiff's employment, Sherri Spanoil, an employee of Defendant, stated that she

posted a FMLA notice in the teacher's lounge.  Defendant's Motion, Ex. P at 19:11-20:7.  Also, the

School District did maintain an FMLA policy, School District Policy No. 6551, during Plaintiff's

employment.  Gaudette Aff., ¶ Ex. B; Defendant's Motion, Ex. N at 70.  This policy was kept in the

Superintendent's office and was available upon request, but was not automatically sent to

Defendant's employees.  Hoke Decl., Ex. K, 70:9-21.  Moreover, according to the evidence

provided by Plaintiff, during Plaintiff's employment, employees were not otherwise notified of their rights and responsibilities under the FMLA.  Hoke Decl. (Dkt. No. 31), Ex. K, 69:1-10; 70:15.

Because the FMLA requires an employee to work at least 12 months before they become eligible for FMLA protections, 29 U.S.C. § 2611(2)(A)(i),  Plaintiff was not covered by the FMLA during the 2006-2007 school year but she was covered during the 2007-2008 school year.  During the 2006-2007 school year, Plaintiff took leave on 17 separate occasions which totaled approximately 12.5 days of sick leaves, 4 days of personal leave, and 3 days of bereavement leave. Gaudette Aff. ¶ 9, Ex. A.  In March 2007, Superintendent of Schools James Gaudette ("Superintendent Gaudette") became aware that Plaintiff had exceeded the amount of paid leave she was eligible for under her contract.  Id. ¶ 9.  Superintendent Gaudette reviewed the "Absence Verification Summary" for Plaintiff, which summarizes all the leave taken by a specific employee and also includes the date, amount, and categorical reason that the leave was taken.  Id.  By March 2007, Plaintiff had taken approximately twelve and a half days of leave on seventeen separate occasions.  Id.  Under the terms of the CBA, Plaintiff had been eligible for 10 days of sick leave, four days of personal leave, and three days of bereavement leave.  Gaudette Aff. ¶ 9, Ex. A. Plaintiff had exceeded her sick leave under the CBA for the 2006-2007 school year, and therefore she received unpaid leave, which is not covered by the CBA.  Gaudette Aff. ¶ 9.

In reviewing Plaintiff's Absence Verification Summary, Superintendent Gaudette also became concerned that many of Plaintiff's absences had occurred during extended holidays and weekends.  Id.  Plaintiff had taken leave on four separate Mondays, one Friday, a conjoining Monday, Tuesday, and Wednesday, a conjoining Monday and Tuesday, and the day after the New Years holiday.  Id.  By this time, Plaintiff had requested leave in advance four times by filling out

Time Off Request Forms; and she only once provided a basis on the form for the requested leave.
Id.

After reviewing Plaintiff's Absence Verification Summary, Superintendent Gaudette issued Plaintiff a letter informing her that he had concerns about her absenteeism. Gaudette Aff. ¶ 9, Ex. E. Plaintiff requested additional leave in the 2006-2007 school year, with her leave during that year totaling nearly fourteen days on twenty separate occasions. Gaudette Aff. ¶ 10, Ex. F. Plaintiff's Summative Evaluation Report for the 2006-2007 school year noted that Plaintiff needed to improve her attendance record during the following school year. Gaudette Aff. ¶ 10, Ex. G.

However, the School District offered Plaintiff employment for the 2007-2008 school year. Gaudette Aff. ¶ 10. In October 2007, Plaintiff's husband suffered a series of seizures that required emergency medical attention, and Plaintiff appeared in Superintendent Gaudette's office in order to explain to him that her husband was sick and that she would need a few days off to take him to the doctor. Gaudette Aff. ¶ 11; LeClair Aff. ¶ 35. Plaintiff explained to Superintendent Gaudette that because her husband's health had taken a turn for the worse, she would need additional leave to take him to medical appointments. Gaudette Aff. ¶ 35. Superintendent Gaudette responded by telling Plaintiff to take as much time as she needed. Gaudette Aff. ¶ 11

Plaintiff was arrested for petty larceny on March 13, 2008 because she was accused of using a credit card in the name of her husband's employer without permission, and Defendant was notified of this arrest in April. Gaudette Aff. ¶ 12, Ex. H. The School District decided not to take any action against Plaintiff with regard to her arrest until her legal case was resolved. Hoke Decl., Ex. L at 45:15-48:5. The charges were eventually dropped, and no disciplinary action was taken against Plaintiff as a result of her arrest. Gaudette Aff. ¶ 12.

4

During the 2007-2008 academic school year, Plaintiff requested leave on twenty-seven occasions totaling 15.5 sick and personal leave days.  LeClair Aff, Ex. I.  According to Plaintiff, all but 3.499 days of non-qualified sick and personal time and 2.462 days of funeral leave for the death of a family member were taken to care for Plaintiff's chronically ill husband.  LeClair Aff. ¶¶ 16-20; Gaudette Aff., Ex. L.  She requested leave in advance ten times with regard to eleven instances of leave.  Gaudette Aff. ¶ 13, Ex. J.  Three of Plaintiff's Time Off Request Forms noted she was taking her husband to the doctor as the reason she needed leave.  Gaudette Aff. ¶ 13, Ex. J; Defendant's Motion, Ex. N at 93-94.

In a letter dated June 19, 2008, Superintendent Gaudette informed Plaintiff that he intended to recommend that the Board of Education terminate her.  Defendant's Motion, Ex. K.  According to Plaintiff, she was aware of the existence of the FMLA before July 2008, but she thought this legislation was for pregnancy-related absences.  LeClair Aff. ¶ 50.  However, after learning she was likely to be terminated, Plaintiff further researched her rights as an employee under the FMLA. LeClair Aff. ¶ 43.

Plaintiff once again approached Superintendent Gaudette after receiving his letter and told him that many of her undocumented absences were related to providing care for her husband. Gaudette Aff. ¶ 14.  She also provided Superintendent Gaudette with a copy of her 2007-2008 Absence Verification Summary that contained notations in an effort to substantiate her absences. Gaudette Aff. ¶ 14, Ex. L; Defendant's Motion, Ex. M at 99.  These notations indicated that twelve of Plaintiff's absences during the 2007-2008 school year related to assisting her husband for a total of seven days of leave.  Gaudette Aff. ¶ 14, Ex. L.  On July 8, 2008, Plaintiff also wrote to Superintendent Gaudette and the President of BUFSD's Board of Education.  This letter informed

Secretary Gaudette that Plaintiff's "husband in October 2007 took a turn for the worse having

seizures.  He was hospitalized on October 11th and immediately the following week I had a meeting

with you of the current situation and explaining that I would be taking intermittent time to for his

diagnostic and treatment appointments.  I assured you that I would do my best to arrange

appointments so that it would affect my attendance as little as possible."  LeClair Aff., Exs. G and

H.  This letter also informed Superintendent Gaudette that Plaintiff believed her FMLA rights were

being infringed upon and that her termination was in retaliation for exercising her FMLA rights.  Id.

After Superintendent Gaudette received Plaintiff's July 8 letter, she was called to the

Superintendent's office where he reaffirmed that she would be terminated for her excessive

absences.  Gaudette Aff. ¶ 45.  On July 25, 2008, Plaintiff was again informed in a letter by

Superintendent Gaudette that her performance was being terminated for absences.  This letter noted

that Plaintiff had been absent "on average 15 days per year since the commencement of your

employment with the District," that she had been absent "a total of 15 ½ sick and personal days" in

2007-2008, and that "half or your sick and personal time resulted in an extension of a weekend."

LeClair Aff., Ex. I.

Plaintiff was never told in advance that she could not take leave to care for her husband, or

that she would suffer adverse employment consequences for taking such leave.  Gaudette Aff., ¶ 15.

However, Superintendent Gaudette did indicate during his deposition that Plaintiff's termination

was the result of her overall absenteeism, coupled with two other factors: her arrest and using time

from the sick bank.  Hoke Decl., Ex. K at 112:10-19.  Superintendent Gaudette specifically noted

that five absences would not have been considered excessive, and noted that he only becomes

concerned about absenteeism once absences enter the double digits.  Hoke Decl., Ex. K at 61:19-

62:4, 48:9-10.  During Plaintiff's employment, performance evaluations consistently rated her as above-average at fulfilling her duties as a Teaching Assistant.  LeClair Aff. ¶ 39, Exs. D, E, F.

Superintendent Gaudette recommended Plaintiff's termination to the Board of Education. Gaudette Aff. ¶14.  On August 18, 2008, the School Board accepted Mr. Gaudette's recommendation and voted to terminate Plaintiff's employment.  Gaudette Aff. ¶14.


## II. DISCUSSION

### A. Legal Standard for Summary Judgment Motions

The standard for summary judgment is well-established.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party.  See City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 45 (2d Cir. 1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.  The non-moving

party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), but "must set forth specific facts showing that there is a genuine issue of fact for trial." First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288 (1968).

### B. Interference Claim

The FMLA entitles "eligible employees" to a maximum of twelve weeks of unpaid leave during any twelve month period on account of the need to provide care for an immediately family member (spouse, parent, or child) who has a serious health condition. 29 U.S.C. § 2612(a). This act "'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should the employer 'interfere with, restrain, or deny the exercise of' FMLA rights." Sister v. CDC Ixis N. Am., Inc., 45 F.3d 161, 174 (2d Cir. 2006) (internal citation omitted.)

Pursuant to the FMLA, an eligible employee may raise distinct causes of action for "inference" and "retaliation." Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004). In her Complaint, Plaintiff brings causes of action for both "interference" and "retaliation." Compl. The Court finds, however, that there is no factual basis for Plaintiff's interference claim, and therefore concludes that this claim should be dismissed.

Whether a plaintiff's claim "is really about interference with his substantive rights, not discrimination or retaliation" is often a difficult question. Kauffman v. Fed Express Corp., 426 F.3d 880, 884 (7th Cir. 2005). Under 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." However, the FMLA itself does not define the term "interference." Instead, the

8

United States Department of Labor has promulgated regulations under which interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under the FMLA." 29 C.F.R. § 825.220(b).

In order to make out a *prima facie* case for interference, Plaintiff must establish that: "(1) that she is an "eligible employee" under the FMLA; (2) that [BUFSD was] an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the [BUFSD] of her intention to take leave; and (5) that [BUFSD] denied her benefits to which she was entitled by the FMLA." Bond v. Sterling, Inc., 77 F. Supp. 2d 300, 306 (N.D.N.Y 1999).  Defendant does not dispute that it is a covered employee under the FMLA, and it does not dispute that Plaintiff became an "eligible employee" at the beginning of her second year of probationary employment. Furthermore, Defendant assumes "*arguendo* for purposes of this motion that Plaintiff's husband had a serious medical condition, thereby entitling Plaintiff to *unpaid* leave for those occasions where she took leave to provide care for her husband."  Defendant's Motion, Memorandum of Law in Support of Summary Judgement ("Defendant's Memo") at 11 (emphasis in original).  Rather, the dispute between the parties regarding Plaintiff's claim of interference concerns whether Plaintiff advised Defendant of her intention to take FMLA qualified leave and whether Defendant denied her any benefit provided by the FMLA.  Id.

Even if the Court assumes *arguendo* that Plaintiff advised her employer that she was taking FMLA qualified leave, the Court does not find any evidence in the record that Defendant denied her a benefit provided by the FMLA.  To the contrary, Plaintiff was permitted to take FMLA-eligible leave whenever she needed it during the 2007-2008 school year.  During the deposition of Plaintiff

9

admitted that every time she requested leave ahead of time she was granted it.  Defendant's Motion,

Ex. M at 139.  This included both the three occasions Plaintiff requested leave in advance and the

times that she called in sick on the same day she was taking leave.  Id.  There is no evidence that the

school district interfered with, denied, or restrained Plaintiff's exercise of FMLA rights, in which

case an interference claim should be dismissed.  Moreover, Plaintiff has not pointed to evidence

which suggests that Defendant discouraged her from taking FMLA-eligible leave.

    The only theory Plaintiff offers that would suggest Defendant interfered with her exercise of

FMLA rights is that the act of terminating her employment was itself a form of interference.  Dkt.

No. 31-2 at 5.  However, the Court finds that Plaintiff's theory of interference by termination is

merely a retaliation theory in disguise.  In Di Gionvanna v. Beth Israel Medical Center, 651 F. Supp.

2d 193, 203 (S.D.N.Y. 2009), the court noted that a Plaintiff's claim that he "was terminated due to

alleged performance problems that resulted from the very use of his FMLA leave" was "really . . .

no more than an effort to dress Di Giovanna's retaliation claim in (barely) different clothing."  In

Vosburgh v. American Nat. Red Cross, 209 WL 3644196 at *7 (N.D.N.Y. October 27, 2009), the

court did not find that termination constituted an act of interference, noting that "Plaintiff was given

twelve weeks of leave, which is all that is required under the FMLA."

    Plaintiff cites Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 175-76 (2d Cir. 2006) as

supportive of its interference by termination theory, but upon examining Sista, the Court does not

find that this case bolsters Plaintiff's position.  In Sista, the Second Circuit discussed a split

regarding whether to apply the McDonnell Douglas[1] burden shifting approach to FMLA claims, or

alternatively to "emphasize[] that violation of § 2615(a)(1) involves interfering with the exercise of

---

[1]McDonnell Douglas Corp. v. Green, 411 U.S. 793 (1973).

10

rights given by the FMLA rather than retaliating against those who make use of their rights." Id. at

175.  Under the second approach, a plaintiff "need only prove by a preponderance of the evidence

that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate

her." Id. at 175-76.

Plaintiff incorrectly claims that in Sista, the Second Circuit adopted the second approach.

Plaintiff's Reply at 4.  After quoting the Second Circuit's description of the second test, Plaintiff

fails to note that the Second Circuit decided that, given the facts in the case before it, "[r]egardless

of whether Sista asserts an 'interference' or a 'retaliation' claim, he cannot show that CDC

considered his FMLA leave and request to return a negative factor in its decision to terminate him."

Id.  Thus, the Second Circuit in Sista held that it was not necessary to choose which approach to

take with respect to interference claims because Plaintiff had failed to satisfy either standard, and

that case does not offer support for Plaintiff's theory that termination is a form of interference.

The Court finds that Plaintiff does not make an interference claim under the FMLA, but

instead attempts to disguise a retaliation claim as an interference claim.  The substance of Plaintiff's

interference claim is that "Defendant terminated the Plaintiff for what it stated were 'excessive

absences,' the vast majority of which were FMLA qualified."  Plaintiff's Response at 5.  The

gravamen of Plaintiff's claim is therefore that Defendant terminated Plaintiff as a response to her

past absences, which this Court finds is a claim that lies in retaliation rather than interference.  The

Court therefore finds that summary judgment is appropriate with respect to Plaintiff's interference

claim.

**C. Statutory Notice Claim**

Plaintiff also claims that Defendant interfered with her FMLA rights by failing to give her notice of the existence of the FMLA and her right to take unpaid leave to care for her husband.  Dkt. No. 1 ¶ 25, 28-9.  Under 29 U.S.C. § 2619, employers are required to inform their employees of their rights under the FMLA.  An employer's failure to comply with § 2619 does not by itself give an employee a private cause of action, but an employee may allege under § 2619(a)(1) that the employer's failure to provide notice negatively affected the exercise of the employee's FMLA benefits.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2d Cir. 1999).

In reviewing the record before the Court, it is clear that Defendant has provided evidence that it posted a FMLA notice during Plaintiff's employment, and Plaintiff has not offered any evidence that would tend to contradict this.  The School District's Payroll Clerk, Sherri Spaniol, testified that she posted a notice provided by the U.S. Department of Labor entitled "Your Rights under the Family and Medical Leave Act of 1993" on a bulletin board in the teacher's lounge during both school years at issue in this case (2006-2007 and 2007-2008).  Defendant's Motion, Ex. P at 18-20.  Superintendent Gaudette and Assistant Superintendent Potter also claimed that the posting was present.  Defendant's Motion, Ex. L at 35:15-36:9.  Plaintiff has stated that she knew there were postings in the teacher's lounge, but she did not remember seeing the FMLA posting.  Defendant's Motion, Ex. M at 135.  However, Plaintiff's statement that she didn't notice the posting does not contradict Defendant's evidence: it is perfectly compatible with Defendant's claim that it posted the FMLA publication that Plaintiff did not notice it among the various postings that were on the bulletin board.  A statement that Plaintiff does not recall seeing the posting, without anything more, does not undermine Defendant's evidence and thus does not create a genuine dispute regarding a material fact.

12

Nor does Plaintiff offer any other evidence that would tend to suggest the notice was not posted.  Plaintiff does note that Superintendent Gaudette stated in his deposition that no employee had ever requested FMLA leave.  Plaintiff's Response at 10; Hoke Decl., Ex. K, 82:13-19. However, even if no employee has ever requested FMLA leave, this does not demonstrate no notice was posted.  The lack of FMLA requests does not go to whether notice was posted or not.

Plaintiff disingenuously argues that the statements of Defendant's employees that the notice was posted "is directly contradicted by the document itself which reflects in the lower right hand corner that it was revised in January 2009, after the Plaintiff's termination."  Plaintiff's Response at 10; Hoke Decl., Ex. N.  Plaintiff obscures the fact that there are actually two notice documents before the Court: a notice that was revised in August 2001 ("2001 document") (Ex. C), and a notice that was revised in January 2009 ("2009 document") (Hoke Decl., Ex. N (Dkt. No. 31)).  Plaintiff also fails to mention that during her deposition, Sherri Spaniol–the school district employee who was actually responsible for posting the notice–clearly stated that the Notice she posted was the 2001 document, not the 2009 document. 19:15-20:7.

It is true that Assistant Superintendent Potter, when asked in his deposition whether "those postings" (referring to both documents) were "placed in a conspicuous place . . . during the court of Miss Le Clair's employment," responded "Yeah."  Defendant's Motion, Ex. O at 35:15-35:9. However, in the deposition, Plaintiff's counsel failed to distinguish between the two postings in his questioning of Assistant Superintendent Potter, simply referring to them as "these documents" and "those postings."  Id.  Superintendent Potter was not the employee who posted the statutory notice, and as the two documents at issues are similar, he would not have been familiar with the subtle differences between them.  Finally, even if Assistant Superintendent Potter's statements lacked

13

credibility, as the Court discusses above, Plaintiff has failed to offer any evidence that the statutory

notice was not properly posted.  The Court therefore finds that Defendant has provided evidence

that it posted the FMLA notice on a bulletin board in the teacher's lounge, and Plaintiff has not

offered evidence to contradict such an inference.

Plaintiff also argues that Defendant failed to provide notice because the regulations require it

to "provide this general notice to each employee by including the notice in employee handbooks or

other written guidance to employees concerning employee benefits or leave rights."  29 CFR §

824.300(a)(3).  Defendant points out that §  824.300(a)(3) "did not become effective until January 1,

2009, more than four months *after* Plaintiff's employment with the School District ended."  See

also, 29 C.F.R. § 825.300(a)(3).  However, Defendant fails to mention that prior to the January 2009

regulations, § 824.301 had (since 1995) required additional notice beyond the requirement that

employers conspicuously post FMLA notice.  Specfically, 29 C.F.R. § 825.301 reads:

> (a)(1) If an FMLA-covered employer has any eligible employees and has any written guidance
> to employees concerning employee benefits or leave rights, such as in an employee handbook,
> information concerning FMLA entitlements and employee obligations under the FMLA must
> be included in the handbook or other document. For example, if an employer provides an
> employee handbook to all employees that describes the employer's policies regarding leave,
> wages, attendance, and similar matters, the handbook must incorporate information on FMLA
> rights and responsibilities and the employer's policies regarding the FMLA . . . .

> (2) If such an employer does not have written policies, manuals, or handbooks describing
> employee benefits and leave provisions, the employer shall provide written guidance to an
> employee concerning all the employee's rights and obligations under the FMLA. This notice
> shall be provided to employees each time notice is given pursuant to paragraph (b), and in
> accordance with the provisions of that paragraph . . . .

> (b)(1) The employer shall also provide the employee with written notice detailing the specific
> expectations and obligations of the employee and explaining any consequences of a failure to
> meet these obligations . . . .

> (c) Except as provided in this subparagraph, the written notice required by paragraph (b) (and

by subparagraph (a)(2) where applicable) must be provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave (if FMLA leave is taken during the six-month period). The notice shall be given within a reasonable time after notice of the need for leave is given by the employee—within one or two business days if feasible. If leave has already begun, the notice should be mailed to the employee's address of record.

See also, Brock v. United Grinding Technologies, Inc., 257 F. Supp. 2d 1089 (S.D. Ohio 2003).

As the moving party, Defendant must meet its "initial burden of demonstrating an absence of a genuine material fact." Celotext, 477 U.S. at 323. Defendant has failed to meet this initial burden with regard to the question of whether it satisfied federal FMLA notice requirements. Defendant argues that it posted FMLA notice in the teacher's lounge and had a FMLA policy that was available to all employees upon request (Defendant's Memo at 14-15), but Defendant fails mention, much less provide an explanation, as to how it complied with 29 C.F.R. § 825.301 (a notice regulation that *was* in place during the 2006-2007 and 2007-2009 school years). With regard to notice, Defendant therefore fails to demonstrate an absence of a genuine dispute regarding a material fact. Specifically, Defendant fails to note whether it had an Employee Handbook or other document that it circulated, and if so, whether FMLA notice was provided therein, or if Defendant had no such document, that it disseminated FMLA notice otherwise in accordance with the regulation.

Defendant also argues that Plaintiff's notice claim must be dismissed because, even if Defendant's notice was deficient, Plaintiff cannot "demonstrate that she was injured or prevented from exercising her rights under the FMLA in a meaningful way as a result of the employer's failure to do so." Defendant's Reply at 6. Plaintiff claims that the injury she suffered because she was not aware of FMLA protections was that "she was forced to compromise her duty to her husband such as being forced to schedule his medical appointments at times satisfactory to the Defendant and taking only a small fraction of the time necessary for her husband's care." LeClair Aff. ¶¶ 26, 28.

15

Thus, there is a genuine dispute regarding whether Plaintiff was able to use the FMLA-eligible leave to which she was legally entitled, or whether she was harmed because she wasn't aware of FMLA leave apart from pregnancy.

Defendant argues that these allegations, which are supported by an affidavit from Plaintiff, are undermined by Plaintiff's deposition, in which she was asked, "So every time you needed to take leave you were able to take leave," and responded, "Yes."  Dkt. No 28-4, Ex. M at 139; Defendant's Reply at 6-7.   However, Defendant fails to mention the context in which this answer took place: Plaintiff was asked, "Was there ever a time when you called in the phone number to advise the school that you were needing to take leave and they told you you were not permitted to take leave," to which Plaintiff responded, "No."  Dkt. No 28-4, Ex. M at 139.  Plaintiff was then asked whether she was able to take leave every time she needed to take leave and responded "Yes." Id.  It is unclear whether Plaintiff's response was that she was never denied leave when she called in or requested it, or whether she was stating more broadly that she took all of the FMLA leave for which she was legally eligible.

Even if the Court accepts Defendant's assertion that Plaintiff said in her deposition that she took all of the FMLA leave she needed to take, given that there is conflicting evidence in the record, this means that Defendant has established the presence (not the absence) of a genuine dispute regarding a material fact.  Courts have held that "in some cases where the leave was anticipated, an employer's failure to provide notice that the leave counts against the FMLA entitlement could interfere with the employee's ability to plan and use future FMLA."  Ragsdale v. Wolverine Worldwide, 218 F.3d 933, 939 (8th Cir. 2000 ).  If a failure to provide notice can interfere with an

employee's ability to use future FMLA leave, surely it can interfere when an employees ability to use present leave they are entitled to.

In this case, there is a genuine issue of material fact because the parties disagree regarding when Plaintiff was unable to exercise leave to which she was legally entitled.  To determine whether Plaintiff was harmed because she wasn't able to take all the FMLA leave she was entitled to, a trier of fact would need to weigh several pieces of evidence, including Plaintiff's affidavit stating she took only a fraction of the FMLA leave for which she was eligible and her statement during the deposition that she took the FMLA leave that she needed.  The Court therefore finds that Defendant has not met its burden of demonstrating there is no genuine issue of material fact on the harm issue.  As a consequence, the Court finds that summary judgment is not warranted with respect to Plaintiff's notice claim.

### D. Retaliation Claim

The Second Circuit has adopted the McDonnell Douglas burden shifting framework when assessing FMLA retaliation claims.  Potenza, 365 F.3d at 168.  A plaintiff must establish the following elements to make a prima facie case: (1) she exercised rights protected under the FMLA; (2) she was qualified for his position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  Id.  To establish a *prima facie* case, Plaintiff does not need not prove that retaliation was the only reason for her termination; she may establish a FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision. A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions.  Christensen v. Bristol-Myers Squibb Co., 1994 U.S. Dist. LEXIS 12149,

17

16-17 (S.D.N.Y. Aug. 30, 1994).  See Potenza , 365 F.3d at 167.  Should a plaintiff establish a

*prima facie* case, Defendant then bears the burden of articulating a legitimate, clear, specific and

non-discriminatory reason for its actions.  Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir.

1995).  Finally, if a defendant satisfies this burden, Plaintiff has the burden to prove that the

employer's reason for termination was merely a pretext for discrimination.  Id.

    The Defendant concedes, *arguendo*, that Plaintiff has established all the elements of a

*prima facie* retaliation claim except with respect to the causal connection between Plaintiff's

termination and a retaliatory intent by Defendant or its employees.  Defendant's Memo at 18.

Defendant argues that Plaintiff has failed to establish a causal connection because "[t]here is not

temporal proximity between Plaintiff's exercise of a right provided by the FMLA and her

termination."  Id. at 18-19.

    However, Plaintiff need not rely on a temporal proximity argument, because she has offered

contains statements by Superintendent Gaudette which tend to show that Plaintiff's FMLA-qualified

leave was a substantial factor in the School District's decision to fire her.  At Superintendent

Gaudette's deposition, he was asked the following question:  "was the sole basis for your

recommendation to terminate the Plaintiff based upon the absences that were unrelated to her

husband's medical condition?"  After being given the opportunity to declare that he fired Plaintiff

based upon non-FMLA absences, Superintendent Gaudette responded, "It was based on the total

amount of absences that she accrued over the two years that she was with us, coupled with the fact

that she had contributed to the sick leave bank, coupled with the fact that there was some concern

about her integrity using her husband's employer's credit card."  Hoke Decl., Ex. K, 112:112:10-19.

 Superintendent Gaudette's response, with its reference to "total absences" rather than non-FMLA

absences, suggests that Plaintiff's FMLA-related absences were factored into his decision to terminate Plaintiff.

Moreover, other statements during Superintendent Gaudette's deposition confirm that his reference to the "total amount of absences" included FMLA-eligible leave.  During Plaintiff's second year, in which she was covered by the FMLA, all but 3.499 days of non-qualified sick and personal time and 2.462 days in funeral leave were caused by her husband's chronic medical condition.  LeClair Aff. ¶¶16- 20.  In his deposition, Superindendent Gaudette expressed his belief that fives days of absences would not be excessive, and even stated that an employee's use of leave did not concern him until it exceeded double digits.  Hoke Decl., Ex. K, 48:9-10, 61:19-62:4.  The Assistant Superintendent further stated that Plaintiff was fired for being "absent too frequent." Hoke Decl., Ex. L, 60:11-16.  Read in the light most favorable to Plaintiff, these statements indicate that the Plaintiff's FMLA-eligible leave was a substantial, or even the motivating, factor in her dismissal, and thus may be enough to give rise to an inference of retaliatory intent.

Because Plaintiff has established her *prima facie* case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for discharging Plaintiff.  Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1224 (2d Cir. 1994).  Defendant offers the excessive absences taken by Plaintiff  that were unrelated to her husband's care as its purported legitimate, non-discriminatory basis for Defendant to terminate Plaintiff's employment.  Defendant's Memo at 22.  Defendant further points out that it does not employ substitutes, and most of the children who attend school there are low functioning or have other special needs.  Id.

In order to establish that Plaintiff was fired for the overall number of non-FMLA absences, Defendant points to Superintendent Gaudette's affadavit, which claims that his "recommendation to

the Board to terminate Mrs. LeClair's employment was based upon the excessive amount of leave

Mrs. LeClair took during the 2006-2007 academic school year and the amount of leave she took

during the 2007-2008 academic school year that  was unrelated to care for her husband."  Gaudette

Aff. at 9.  If believed, this would establish that Plaintiff was fired for taking excessive non-FMLA

absences, and would therefore disprove Plaintiff's retaliation claim.  Based upon Superintendent

Gaudette's statement that using the sick bank or Plaintiff's arrest were factors in the decision to

terminate her, the Defendant could also claim that these factors offers legitimate, non-

discriminatory reasons for Plaintiff's termination..

Even assuming Defendant has articulated a legitimate, clear, specific, and non-

discriminatory reason for its actions, the Court finds that Plaintiff has established that "excessive

absenteeism" is pretextual reason for Plaintiff's termination.  Despite Defendant's assertion that

Plaintiff was fired only for non-FMLA-eligible absences, the record is replete with evidence that

Superintendent Gaudette used her FMLA leave in his calculations: Superintendent Gaudette's

unqualified statement that a reason for Plaintiff's firing was "the total amount of absences that she

accrued over the two years she was with us" (Hoke Decl., Ex. K, 112:112:10-19), his statement that

absences in the single digits would not have brought up concerns regarding absenteeism during her

second year (Hoke Decl., Ex. K at 61:19-62:4, 48:9-10), and his correspondence with Plaintiff that

included the total number of sick and personal days (including FMLA leave) in his explanation for

her termination (LeClair Aff., Ex. I).  Superintendent Gaudette's sudden and spontaneous statement

that he bifurcated Plaintiff's absences and excluded Plaintiff's FMLA leave from his calculations

strains credulity, and the Court therefore finds that Plaintiff has met her burden in showing that

triable issues of fact exist as to whether Defendant's proffered non-discriminatory reasons are pretextual.

Defendant also argues that coverage and safety issues arise from absenteeism (Defendant's Memo at 22), which appears to constitute a hardship defense. However, such a defense could not constitute a clear, specific, non-discriminatory reason for terminating Plaintiff. The FMLA statue is clear and unambiguous with regard to the unpaid leave that employees are entitled to: "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period . . . (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C, § 2612. There is no qualifier, exception, or caveat in this statutory scheme that would suggest that coverage and safety issues which create a hardship for the employer can excuse retaliation against an employee for using FMLA leave.

The cases cited by Defendant regarding retaliation claims are clearly distinguishable from the case presently before the Court. In Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004), a district court did find that retaliatory intent was absent when an employee was unable to perform the "essential functions" of a job because that employee lacked accreditation. However, in the present case, Plaintiff received positive performance reviews and Defendant concedes she was able to perform the responsibilities of her position. Similarly, in Bradley v. Mary Rutan Hosp. Assoc., 322 F. Supp. 2d 926, 947 (S.D. Ohio 2004), a court posed a hypothetical in which an employee's "many absences had [occurred] before she became eligible for FMLA leave and/or any of the other absences she did not claim as being for the purpose of caring for" her husband, and concluded that "the Defendant could be found not to have violated the FMLA for

21

terminating, since it is undisputed that [the non-qualifying absences] were a sufficient basis for terminating her under Defendant's policies."  Because the Plaintiff has presented evidence that would suggest that FMLA-qualified absences were a factor in her termination, the <u>Bradley</u> decision does not suggest that summary judgment is appropriate.

And finally, in <u>Webb v. Nationwide Mut. Ins. Co.</u>, 2009 WL 2983043, at *10-13 (S.D. Ohio September 14, 2009), a court found summary judgment appropriate where there was "no evidence that Smith [the employer] considered all of Webb's [the employee's] absenteeism, which could include FMLA protected absences," but instead "the only evidence presented is that non-FMLA protected tardies were all that was considered in the decision to terminate, and these tardies alone were a sufficient basis for terminating Webb."  The Court has already found that Plaintiff produced evidence that tends to show her FMLA-qualified absences were a factor in his firing, and thus the present case is easily distinguishable from <u>Webb</u>.

In light of the above, the Court finds that summary judgment is not appropriate with respect to Plaintiff's retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, it is:

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 16) is **GRANTED** with respect to Plaintiff's claim against Defendant for interference with her FMLA rights, but **DENIED** with respect to Plaintiff's claims against Defendant for interference with her ability to exercise FMLA rights because of failure to provide notice, and retaliation for attempting to exercise her FMLA rights; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:       October 28, 2010
                Albany, New York

                                        Lawrence E. Kahn
                                        U.S. District Judge